# 23-7613-cv

---

### UNITED STATES COURT OF APPEALS
### FOR THE SECOND CIRCUIT

---

CERTAIN UNDERWRITERS AT LLOYDS, LONDON, INDIAN HARBOR
INSURANCE COMPANY, QBE SPECIALTY INSURANCE COMPANY,
STEADFAST INSURANCE COMPANY, GENERAL SECURITY INDEMNITY
COMPANY OF ARIZONA, UNITED SPECIALTY INSURANCE COMPANY,
LEXINGTON INSURANCE COMPANY, HDI GLOBAL SPECIALTY SE, OLD
REPUBLIC UNION INSURANCE COMPANY, GEOVERA SPECIALTY
INSURANCE COMPANY, TRANSVERSE SPECIALTY INSURANCE
COMPANY,

*Petitioners-Appellants,*

– v. –

MPIRE PROPERTIES, LLC,

*Respondent-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN
DISTRICT OF NEW YORK

---

## BRIEF OF RESPONDENT-APPELLEE

---

William A. Barousse (LA Bar #29748)
william@voorhieslaw.com
THE VOORHIES LAW FIRM
1100 Poydras Street
Energy Center, Suite 2810
New Orleans, LA 70163
Telephone: (504) 875-2223
Facsimile: (504) 875-4882
*Attorney for Respondent-Appellee*

## CORPORATE DISCLOSURE STATEMENT

Under Fed. R. App. P. 26.1, Respondent-Appellee make this disclosure:

1. Mpire Properties LLC has no parent corporation and no publicly held corporation that owns 10% or more of its stock.

/s/ William Barousse
William Barousse

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT……………….…..………..…..…...i

TABLE OF CONTENTS……………………………………………..…………...ii

TABLE OF AUTHORITIES………………………………………...……v

PRELIMINARY STATEMENT……………………………………………...……1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW…………...…..2

SUMMARY OF THE ARGUMENT……………………………………………3

ARGUMENT…………………………………………………………6

    I.    The District Court correctly conducted an analysis of the validity of the arbitration clause rather than delegating that inquiry to an arbitrator…………………………………6

    II.    There is no agreement in writing to arbitrate signed by either the Sellers or Mpire, so there is no agreement to arbitrate……………………………………………..8

    III.    The District Court correctly found that that the Louisiana Insurance Code reversed preempted the Federal Arbitration Act……14

    IV.    Louisiana law invalidates the arbitration clause in the Policies……..15

        A.    Arbitration clauses in insurance policies are prohibited and void in Louisiana pursuant to La. R.S. 22:868……………….15

            i.    Prohibitions and Nullifications created by La. R.S. 22:868…………………………………..16

            ii.    La. R.S. 22:868(A) distinguishes between jurisdictional and venue clauses, and while La. R.S. 22:868(D) now allows venue clause in some insurance policies, courts have invalidated arbitration clauses for decades because

they deprive a Louisiana court of jurisdiction…………18

iii.    The phrase "surplus lines insurer" does not appear anywhere in La. R.S. 22:868(D), and La. R.S. 22:436 subjects the Insurers to approval of the Department of Insurance…………………………………………………….26

iv.    The legislative history of the 2020 amendment to La. R.S. 22:868, adding Part D, indicates the exception to the prohibition against depriving Louisiana courts of venue was not intended to apply to surplus lines insurers……29

B.    Interpreting La. R.S. 22:868(D) to apply to surplus lines insurers would contradict La. R.S. 22:442 which, unlike La.R.S. 22:868, states it specifically applies to surplus lines insurers……………………………………………………….….30

C.    Even if the arbitration clause were a forum selection clause enforceable by the Insurers (as suggested by them), it should not be enforced because it violates Louisiana public policy……………………………………………….…33

V.    The Louisiana Insurance Code determines the validity and enforceability of the arbitration clause in the Policies because Stephens holds that Convention is not self-executing, and text, history, and judicial treatment of the Convention all confirm it was not self-executing……………………………………………….…………35

A.    The text of the Convention indicates it as not self-executing because it necessarily required implementing legislation…………………………………………….…..…..36

B.    The President and Congress's understanding of the Convention at the time of ratification indicates it was not self- executing…………………………………………………...39

C.    The Supreme Court has consistently recognized that the Convention was not self executing, both before, after, and even in Medellin………………………………………………………40

VI.    If the Convention is not self-executing, then it has no effect domestically…………………………………………………………43

VII.   Even if the Convention applied to the Policies, the Convention does not require enforcement of the arbitration clause……………...45

CONCLUSION AND PRAYER FOR RELIEF…………………….…………47

CERTIFICATE OF SERVICE…………………………………………………49

CERTIFICATE OF COMPLIANCE……………………….…………………..50

# TABLE OF AUTHORITIES

**Cases:**

*Am. Bureau of Shipping v. Tencara Shipyard S.P.A*.,
 170 F.3d 349 (2d Cir. 1999)……………………………………………...13

*Am. Ins. Ass'n v. Garamendi*
 539 U.S. 396 (2003)………………………………………………….44, 45

*Best Concrete Mix Corp. v. Lloyd's of London Underwriters*,
 413 F.Supp.2d 182, 187 (E.D.N.Y. 2006)………………………………….13

*Bi–Economy Mkt., Inc. v. Harleysville Ins. Co. of N.Y.*
 10 N.Y.3d 187 (2008) ……………….....……………………………………34

*Buckeye Check Cashing, Inc. v. Cardegna*
 546 U.S. 440 (2006) …………………………………………………………6

*Burge v. State*
 2010-2229 (La. 2/11/2011)) 54 So. 3d 1110………………………..………32

*Courville v. Allied Prof'ls Ins. Co.*
 2013-0976 (La. App. 1 Cir. 6/5/15) 174 So.3d 659……………..…..19, 20, 21

*Creekstone Juban I, LLC. v. XL Ins. Am., Inc.*
 2018-0748 (La. 5/8/19) 282 So.3d 1042………………………………… 21

*Dedon GmbH v. Janus et Cie*
 411 F.App'x 361 (2nd Cir. 2011) ……………………….…………,,,,,,,12

*Dedon GmbH v. Janus et Cie*
 No. 10 Civ. 04541(CM)
 2011 WL 666174 (S.D.N.Y. Feb. 8, 2011) ………………………………11

*Doctor's Assocs. v. Alemayehu*
 934 F.3d 245 (2d Cir. 2019) …………………………………………... 8

*Donelon v. Shilling*
 2019-00514 (La. 2020) 340 So.3d 786 …………………………………23, 24

v

*Doucet v. Dental Health Plans Mgmt. Corp.*
412 So.2d 1383 (La. 1982) ………………..………15, 16, 19, 20, 21, 24, 25, 26

*Eastern Airlines, Inc. v. Floyd*
499 U.S. 530 (1991) ………………………..………………………………38

*ESAB Grp., Inc. v. Zurich Ins. PLC*
685 F.3d 376 (4th Cir. 2012) ……………………………….……..………44, 45

*Factors Etc. v. Pro Arts*
652 F.2d 278 (2d Cir. 1981) …………………………………..…………………25

*First Options of Chicago, Inc. v. Kaplan*,
514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)…………….7, 8

*Foster v. Nielson*
27 U.S. 253 (1829)……………………………………………………………36

*GE Energy Power Conversion Fr. SAS, Corp. v. Outokumpu Stainless U.S.*
140 S.Ct. 1637 (2020) ……………………………………………13, 42, 45, 46

*Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte*
536 F.3d 439 (5th Cir. 2008) ……………………………….…………………24

*Gozlon-Peretz v. United States*
498 U.S. 395 (1991) ……………………………………………………………...31

*Harren & Partner Ship Mgmt. de Mexico S.A.P.I. v. Am. Bureau of Shipping*
No. 21 Civ. 5361 (LGS)
2021 WL 361733 (S.D.N.Y. July 7, 2021) …………………………………11

*Henry Schein, Inc. v. Archer & White, Sales, Inc.*
139 S.Ct. 524 (2019) ………………………………………………...……4, 7, 47

*Hobbs v. IGF Ins. Co.*
834 So.2d 1069 (La. Ct. App. 2003) …………………………..………20, 21

*Hodges v. Reasonover*
103 So.3d 1069 (La. 2012) …………………………………...……23, 24

*Holick v. Cellular Sales of New York, LLC*
  802 F.3d 391 (2d Cir. 2015) ……………………………………………9

*Indian Harbor Ins. Co. v. Belmont Commons, L.L.C.*
  No. 23-30246
  2024 WL 962376 (5th Cir. March 6, 2024) …………..…15, 16, 24, 25, 32, 33

*In re Arb. between Monegasque De Reassurances S.A.M. v.*
*Nak Naftogaz of Ukraine*,
  311 F.3d 488 (2d Cir. 2002)……………………………………………...13

*International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*,
  206 F.3d 411 (4th Cir.2000)…………………………………………..13

*Kahn Lucas Lancaster, Inc. v. Lark Int'l Ltd.*
  186 F.3d 210 (2nd Cir. 1999) …………………………3, 4, 9, 10, 11, 12, 47

*M/S Bremen v. Zapata Off-Shore Co.*
  407 U.S. 1 (1972) …………………………………………...……23, 33

*Macaluso v. Watson*
  171 So.2d 755 (La. Ct. App. 1965) ……………………………..…18, 20, 21

*MAG Portfolio Consult, GMBH v. Merlin Biomed Grp. LLC*,
  268 F.3d 58 (2d Cir. 2001)………………………………………………13

*Medellín v. Texas*
  552 U.S. 491 (2008) …………….………………………..…passim

*Mitsubishi Motors v. Soler Chrysler-Plymouth*
  473 U.S. 614 (1985) ……………………………………………45, 46

*N.Y. Univ. v. Cont'l Ins. Co.*
  87 N.Y.2d 308 (1995)……………………………………………34

*Natofsky v. City of New York*
  921 F.3d 337 (2nd Cir. 2019) …………………………………………31

*Police Jury of Calcasieu Parish v. Indian Harbor Insurance Co.,*

Case no. 2:24-CV-00342,
2024 WL 1545135 (W.D. La. April 9, 2024……………………15, 16, 21, 25

*Rent-A-Ctr., W., Inc. v. Jackson*
561 U.S. 63 (2010) ……………………………………………4, 6, 7, 47

*Sarhank Grp. v. Oracle Corp.*
404 F.3d 657 (2d Cir. 2005) ………………………………….....3, 12

*Scherk v. Alberto-Culver Co.*
417 U.S. 506 (1974) ……………………………………………40, 41

*Shelter Mut. Ins. Co. v. Rimkus Consulting Grp., Inc. of Louisiana*
2013-1977 (La. 2014) 148 So. 3d 871…………………………..23, 34

*Sosa v. Alvarez-Machain*
542 U.S. 692 (2004) ……………………………..……………39

*Stadtlander v. Ryan's Steakhouses*
794 So.2d 790 (La. 2001)……………………………………23, 24

*Standard Bent Glass Corp. v. Glassrobots Oy*
333 F.3d 440 (3d Cir. 2003) …………………………..……12

*Stephens v. Am. Intern. Ins. Co.*
66 F.3d 41 (2d Cir. 1995)………………………………....passim

*Whitney v. Robertson*
124 U.S. 190 (1888) ……………………………………………37, 43

*Yang v. Majestic Blue Fisheries, LLC*
876 F.3d 996 (9th Cir. 2017) ………………………….……12

*Yegiazaryan v. Smagin*
599 U.S. 533 (2023) …………………………………....……43

**Statutes:**

9 U.S.C. § 201…………………………………….…………35, 41, 42, 43

9 U.S.C. § 202 ................................................................ 38

9 U.S.C. § 208…………………………………………...………12, 35, 42 ,43

15 U.S.C.A. § 1011 ....................................................14

15 U.S.C.A. § 1012 ....................................................14, 35

La. R.S. § 1:3…………………………………………………31

La. R.S. § 22:1 .............................................................15

La. R.S. § 22:1 .........................................................24, 27

La. R.S. § 22:436…………………………………...26, 27, 28, 32, 33

La. R.S. 22:442…………………………...………………30, 31, 32

La. R.S. § 22:443……………………………………....31, 32

La. R.S. § 22:446……………………………..…………18, 27, 32

La. R.S. § 22:629…………………………………..…………19, 20

La. R.S. § 22:861……………………………..…………29, 30, 32

La. R.S. § 22:868……………………………………...…passim

La. R.S. § 22:1892……………………………………..……34

La. R.S. § 22:1973……………………………………………34

**Treaties:**

The Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 21 U.S.T. 2517…………………………...……………………...……passim

General Inter-American Convention for Trade Mark and Commercial Protection, 46 Stat. 2907……………….…………………………………………..37

Vienna Convention on Consular Relations. 21 U.S.T. 77………...…………….41

**Court Rules:**

5th Cir. R. 47.5…………………………………………….…………………24

**Other:**

Hearing to Implement the Convention in the Recognition of Foreign Arbitral Awards Before the Sen. Comm. on Foreign Relations, 91st Cong. 32 (1970) (statement of Richard D.Kearney))………………………………………………………………40

S. REP. NO. 91-702, at 5 (1970)……………………………………………….40

114 CONG.REC. 10488 (1968) (message of President Johnson)…………………40

2020 La. Sess. Law Serv. Act 307 (S.B. 156) (West) ................................30

2022 LA S.B. 484 (NS)………................................................................30

H.R. REP. NO. 91-1181 (1970)……………………….…………………………...40

Forum, Black's Law Dictionary (11th ed. 2019)…...............................17

Forum-selection clause, Black's Law Dictionary (11th ed. 2019)……...................17

Jurisdiction, Black's Law Dictionary (11th ed. 2019)…..........................17

La. Admin. Code, Title 37, § 9013 ......................................................30

Quigley, Leonard, Accession by the United States to the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, Yale Law Journal, 70 YLJ 1049 ....................................................................37

Venue, Black's Law Dictionary (11th ed. 2019) ....................................17

## PRELIMINARY STATEMENT

This appeal reveals regret regarding a litigation strategy employed by eleven insurers, the Petitioners-Appellants ("the Insurers"). They sued Respondent-Appellee Mpire Properties LLC ("Mpire") in the District Court in response to a suit filed by Mpire in state court in Louisiana, hoping for a strategic advantage in their chosen venue. Their plan did not work; now they hope to salvage it. The law does not provide them relief.

Mpire owns seventy-five commercial properties ("The Properties") in the New Orleans area. A160 to A162; A166. The Properties were severally insured the Insurers, under policies of insurance designated by account number 815222 ("The Policies"). A26. The Properties suffered significant damage during Hurricane Ida in 2021. A164.

Mpire purchased the Properties in their damaged condition from the previous owners, Bayou Bulldog Apartments, LLC, Delta Dog Properties, LLC, and Henri Town Apartments, LLC ("the Sellers"), who were the named insureds under the Policies. A166 and A26. In connection with the sale of the Properties, the Sellers assigned to Mpire their rights against the Insurers for damage to the Properties caused by Hurricane Ida. A166.

Mpire hired experts to quantify the damage to the Properties due to Hurricane Ida; the experts concluded that the cost to repair the damage caused by Hurricane

Ida totaled $11,638,891.16. A169 to A171. To date, the Insurers have tendered $1,275,391.54 for damage to the Properties. A172 to A174.

Mpire sued some of the Insurers in state court in Louisiana for outstanding amounts owed under the Policies, and seeking damages, penalties, and attorney fees available under Louisiana Insurance law. A158 to A183. The insurers counter-sued in the District Court seeking to compel arbitration in New York, applying New York law pursuant to an arbitration clause in the Policies. A13 to A20.

The District Court properly denied the Insurers' motions to compel arbitration and to enjoin the Louisiana litigation and found that the arbitration clause in the Policies was not valid under the Louisiana Insurance Code, which reverse preempts the Federal Arbitration Act ("FAA"). A250 to A260. The Insurers now complain of the result in their chosen forum and ask this Court to ignore the precedent of this Court and Louisiana law to reverse the District Court to remedy their strategic error.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1. Did the District Court correctly analyze the validity of the arbitration clause, rather than delegating that inquiry to an arbitrator, when Mpire attacked the validity of an alleged agreement to arbitrate contained in the Policies?

2. Can the Insurers enforce an arbitration clause in the Policies when the Policies were never signed by the Sellers nor Mpire, in light of this Court's holding in

*Kahn Lucas Lancaster, Inc. v. Lark International Ltd*., 186 F.3d 210 (2nd Cir.1999), abrogation on other grounds recognized by *Sarhank Group v. Oracle Corp*., 404 F.3d 657, 660 fn.2 (2d Cir. 2005)?

3. Did the District Court correctly find that the Louisiana Insurance Code reverse preempts the FAA pursuant to the McCarran-Ferguson Act ("MFA")?

4. Did the District Court correctly rule that the arbitration clause in the Policies is not valid under the Louisiana Code of Insurance?

5. Did the District Court correctly rule that The Convention on the Recognition and Enforcement of Foreign Arbitral Awards, *adopted* June 10, 1958, 21 U.S.T. 2517 ("The Convention" or "New York Convention") is not self-executing?

6. As a non-self-executing treaty, can the Convention preempt Louisiana law?

7. Even if the Convention applied to the Policies, does Article II of the Convention require enforcement of the arbitration clause?

## SUMMARY OF THE ARGUMENT

1. The District Court properly decided whether to compel arbitration, instead of referring the question to an arbitrator, since Mpire attacked the validity of the alleged agreement to arbitrate because it was not signed by the Sellers or Mpire and is void as a matter of Louisiana law. This result is clearly correct

under *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63 (2010) and *Henry Schein, Inc. v. Archer & White, Sales, Inc*., 139 S. Ct. 524, (2019).

2. The arbitration clause in the Policies is not valid under the Convention because it was not signed by the Sellers nor Mpire. This is clearly correct under *Kahn Lucas*.

3. The District Court correctly found that the Louisiana Insurance Code reverse preempts the FAA pursuant to the MFA because the Louisiana Insurance Code specifically regulates insurance and FAA does not specifically relate to insurance. This is clearly correct under *Stephens v. American Intern. Ins. Co.*, 66 F.3d 41 (2nd Cir. 1995).

4. The Louisiana Insurance Code invalidates the arbitration clause in the Policies because La. R.S. 22:868 prohibits arbitration clauses in insurance policies because they deprive a Louisiana Court of **jurisdiction** in violation of La. R.S. 22:868(A). Though La. R.S. 22:868(D) was recently added to allow a "forum or venue selection clause" in some insurance policies, arbitration clauses are not treated as forum or venue selection clauses in Louisiana insurance contracts and, even if they were, the Policies are not the types of insuring contracts exempt from the prohibition against forum or venue selection clauses. Also, La R.S. 22:868(A) undisputedly invalidates choice-of-law clauses in insurance policies, and therefore the arbitration clause is not

4

enforceable since it seeks to illegally apply New York instead of Louisiana law.

5. The Convention is not self-executing pursuant to *Stephens*, which is still the law of this Circuit. Even if this Court revisits the question of self-execution, it should reach the same conclusion as *Stephens*. The text of the Convention requires further action from countries that ratify it. The history of ratification indicates neither the President nor Congress thought the Convention was self-executing at the time of ratification. The Supreme Court has repeatedly stated that the Convention was implemented by the FAA and has cited the Convention as an example of Congress knowing when it needed to pass implementing legislation to given an international treaty domestic effects.

6. As a non-self-executing treaty, the Convention has no force in the United States other than through its implementing legislation and does not preempt Louisiana law on its own.

7. Even if the Convention applied to the Policies, the Convention does not require enforcement of the arbitration clause because a Louisiana insurance dispute is not a "subject matter capable of settlement by arbitration" required by Article II(1) of the Convention, and because the Convention does not require referral to arbitration under Article II(3) of the Convention because

the arbitration clause is null, void, and inoperable under Louisiana, and therefore United States, law pursuant to the MFA.

## ARGUMENT

**I.  The District Court correctly conducted an analysis of the validity of the arbitration clause rather than delegating that inquiry to an arbitrator**

The Insurers contend "The District Court…. erred in failing to delegate to the arbitrators MPIRE's challenge to the validity of the arbitration agreement." Insurers' Brief at page 18.  But Mpire attacked the validity of the arbitration clause itself, so the District Court - and not an arbitrator- correctly decided the Insurers' Motion to Compel arbitration. In a case such as this one in which the parties could not have legally agreed to arbitrate, the District Court properly addressed whether there was a valid agreement to arbitrate (and found there was not) before referring any questions to an arbitration panel.

The Supreme Court has held "There are two types of validity challenges [to an agreement to arbitrate]: 'One type challenges specifically the validity of the agreement to arbitrate'…. [while] '[t]he other challenges the contract as a whole.'" *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 69 (2010) citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006)). In the former situation, when "a party challenges the validity … of the precise agreement to arbitrate at issue, the federal court must consider the challenge

6

before ordering compliance with th[e] agreement [to arbitrate]." *Rent-A-Ctr,* 561 U.S. at 71. Conversely, the Supreme Court held that "a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate." *Rent-A-Ctr,* 561 U.S. at 70.

*Rent-A-Ctr.* addressed a "Mutual Agreement to Arbitrate Claims", in which an agreement to arbitrate any disputes between the parties constituted the entire contract between the parties, and which stated that "[t]he Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement." *Rent-A-Ctr.,* 561 U.S. at 66. In this case, the arbitration clause is merely one term of the 131 pages of the Policies. A67; A26 to A156. Mpire attacked the validity of the agreement to arbitrate both because it was not signed, and because it is void under Louisiana law, but Mpire is not attacking the validity of the Policies as a whole.

The Supreme Court has recently reiterated the principles of *Rent-A-Ctr*., stating "To be sure, before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists." *Henry Schein, Inc. v. Archer & White, Sales, Inc*., 139 S. Ct. 524, 530 (2019). Further, "courts 'should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so.'" *Henry Schein, Inc.,* 139 S. Ct. at 531 citing *First Options*

7

*of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995).

The Insurers cite *Doctor's Assocs., Inc. v. Alemayehu*, 934 F.3d 245, 251 (2d Cir. 2019) to suggest issues "related to the enforceability or scope of the arbitration clause" can be delegated to an arbitrator. However, the case says the opposite regarding questions of validity: "threshold questions of arbitrability presumptively should be resolved by the court and not referred to the arbitrator" and "parties may not delegate to the arbitrator the fundamental question of whether they formed the agreement to arbitrate in the first place." *Doctor's Assocs*, 934 F.3d at 250 and 251.

In short, Mpire contended there was never a valid formation of an agreement to arbitrate because the Policies were not signed, and because the arbitration clause is void under Louisiana law. As such, the District Court, not an arbitrator, correctly determined whether there was a valid agreement to arbitrate regardless of whether the Policies contained a "delegation" clause.

## II. There is no agreement in writing to arbitrate signed by either the Sellers or Mpire, so there is no agreement to arbitrate

The Insurers issued the Policies to the Sellers. A26. The Sellers assigned their claims under the Policies to Mpire. A166. Neither the Sellers, nor Mpire, ever signed

an agreement to arbitrate. As such, the Arbitration clause contained in the Policies is also not a valid agreement under the Convention.[1]

To determine whether the arbitration clause can be enforced under the Convention, this Court must determine "whether the parties agreed to arbitrate." *Holick v. Cellular Sales of New York, LLC*, 802 F.3d 391, 394 (2d Cir. 2015).

Article II of the Convention ("Article II") states, in relevant part,

1. Each Contracting State shall recognize an agreement in writing under which the parties undertake to submit to arbitration all or any differences which have arisen or which may arise between them in respect of a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration.

2. The term "agreement in writing" shall include an arbitral clause in a contract or an arbitration agreement, **signed by the parties** or contained in an exchange of letters or telegrams. (emphasis added).

This Court extensively addressed Article II (2) in *Kahn Lucas* and reversed an order compelling arbitration because the arbitration clause in the contract was not signed by one of the alleged parties to it.

*Kahn Lucas* held the comma before the phrase "signed by the parties" in Article II (2) indicated that the phrase modified both "an arbitral clause in a contract" and "an arbitration agreement." *Kahn Lucas,* 186 F. 3d at 217. This Court explained a modifying phrase set off from a series of antecedents by a comma applies to each

---

[1]     The Insurers do not cite any evidence in the record that Mpire or the Sellers ever signed an agreement to arbitrate, and no such evidence exists.

of those antecedents. This Court noted that an interpretation that "signed by the parties" modified only an "arbitration agreement" would render the comma superfluous, violating the rule against surplusage.

In addition to analyzing English grammar, *Kahn Lucas* examined the text of the Convention in other languages. *Kahn Lucas* noted

- "…the Convention exists in five official languages—French, Spanish, English, Chinese, and Russian—of equal authenticity", *Kahn Lucas*, 186 F.3d at 216;

- "Of the five official languages, English, French, and Spanish were the working languages of the United Nations Conference on International Commercial Arbitration", *Id.*

- "In the French- and Spanish-language versions, the word for 'signed' appears in the plural form, 'signes ' and 'firmados' respectively", but "If…only an arbitration agreement need be signed by the parties, the French-language version would utilize the verb "signe " and the Spanish "firmado."*Id*. at 217;

- and "[b]ecause each of the two antecedents is couched in the singular, the modifier unambiguously applies to both of them." *Id*.

Based on the foregoing, *Kahn Lucas* held that French and Spanish versions of Article II indicated that "signed by the parties" modified both "an arbitral clause in a contract" and "an arbitration agreement."

Finally, *Kahn Lucas* stated that "to the extent the plain meanings of the non-English language versions of the Convention do not resolve any ambiguity that exists in the English-language version, the legislative history of Article II puts the matter to rest." *Id*. at 218. This Court noted

> [t]he text of article II, as reported by the Conference's Working Group, and subject only to modification by the Drafting Committee for form, not substance … reverses the terms "arbitration agreement" and "arbitration clause in a contract." The Working Group text thus reads: "The expression 'agreement in writing' shall mean an arbitration agreement or an arbitration clause in a contract signed by the parties, or an exchange of letters or telegrams between those parties."…Therefore, unless the modifier "signed" in the Convention applies to both antecedents, the Drafting Committee's editorial changes would amount to an unintended, and unauthorized, substantive amendment to article II, section 2. *Id.* at 218.

The holding of *Kahn Lucas* mandating that an arbitration provision must be signed by both parties to be valid under Article II is still the law of this circuit. See *Harren & Partner Ship Management de Mexico S.A.P.I. v. American Bureau of Shipping*, 2021 WL 361733 at *1 (S.D.N.Y. 7/7/21) citing *Kahn Lucas* and stating "An arbitration "agreement in writing" is valid when it is "signed by the parties or contained in an exchange of letters or telegrams." See also *Dedon GmbH v. Janus et Cie,* 2011 WL 666174 at *3 (S.D.N.Y. 2/8/11) stating "*Kahn Lucas'* holding

precluding enforcement of an unsigned arbitration agreement pursuant to the New York Convention survives *Sarhank* and remains good law."[2]

Based on *Kahn Lucas*, even if the Convention preempted the Louisiana Insurance Code (which it does not as explained below) the Convention does not require arbitration of Mpire's claims against the Insurers because neither Mpire nor the Sellers signed an agreement to arbitrate with the Insurers.

The Insurers do not address the lack of any signature by the Sellers or Mpire, and therefore the lack of any agreement to arbitrate under the Convention, in their brief. Nonetheless, Mpire anticipates that the Insurers will contend that Mpire is bound to arbitrate its claims under the theory of equitable estoppel because Mpire is seeking a benefit under the Policies. But, cases addressing estoppel either involve an arbitration clause that is not disputed to have been signed as required by the

---

[2]     This Court affirmed *Dedon GmbH* on appeal. See *Dedon GmbH v. Janus et Cie* , 411 Fed.Appx. 361, 365 (2nd Cir. 2011) stating "In *Kahn Lucas*, this court held that to be valid and enforceable, arbitration agreements governed by the [the Convention] which is enforceable under Chapter 2 of the Federal Arbitration Act, 9 U.S.C. §§ 201–208, must be "signed by the parties or contained in an exchange of letters or telegrams."

    The Third Circuit and Eleventh Circuit have also reached the same conclusion as *Kahn Lucas* (see *Standard Bent Glass Corp. v. Glassrobots Oy*, 333 F.3d 440, 449 (3d Cir. 2003) and *Yang v. Majestic Blue Fisheries, LLC*, 876 F.3d 996 (9th Cir. 2017), abrogated on other grounds by *G.E. Energy Power Conversion France SAS Corp. v. Outokumpu Stainless USA, LLC, U.S*., 140 S.Ct. 1637, 207 L.Ed.2d 1 (2020).

Convention[3], or an arbitration agreement not subject to the signature requirements of the Convention.[4] Consequently, there is no legal support to find that a non-

---

[3]     In *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 590 U.S. 432, 140 S.Ct. 1637, 207 L.Ed.2d 1, it was undisputed that "the three agreements at issue were both written and signed*." GE Energy*, 590 U.S. at 445. The question in *GE Energy* was whether a non-signatory who met the definition of a party under the signed agreement could be bound to arbitrate.

In *In re Arb. between Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukraine*, 311 F.3d 488, 495 (2d Cir. 2002), the Second Circuit recognized equitable estoppel as a basis to bind a non-signatory to an arbitration agreement. But, *In re Arb.* contains no indication that there was no signed arbitration agreement at all, which is the situation in this case.

Similarly, in *Am. Bureau of Shipping v. Tencara Shipyard S.P.*A., 170 F.3d 349, 353 (2d Cir. 1999), there is no indication that there was no signed arbitration agreement at all, which is the situation in this case. Instead, the question was whether a party who was not a signatory to a valid arbitration agreement could be bound by it.

In *Best Concrete Mix Corp. v. Lloyd's of London Underwriters*, 413 F.Supp.2d 182, 187 (E.D.N.Y. 2006), the Court acknowledged that a signed agreement to arbitrate is a prerequisite before a non-signatory can be bound by the arbitrate:" "[O]nce a party establishes that ... a signed writing exists, the general rules of contract law apply to determine which parties are subject to arbitration.... The [Convention's] writing requirement does not foreclose the application of the ... principles under which nonsignatories sometimes can be obligated by ... agreements signed by others" citing *International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 418, n 17. (4th Cir.2000)

[4]     The Convention is not discussed in *MAG Portfolio Consult, GMBH v. Merlin Biomed Grp. LLC*, 268 F.3d 58 (2d Cir. 2001). Regardless, this Court noted two agreements that were "executed", one of which "specified that the parties would submit disputes arising under it to arbitration." *MAG Portfolio*, 268 F.3d at 60. Regardless, the Court found equitable estoppel did not apply, and that a non-signatory was not bound by an agreement to arbitrate.

signatory can be bound by an arbitration clause when there is not a valid, signed arbitration agreement in the first place, as is the situation in this case.

## III. The District Court correctly found that that the Louisiana Insurance Code reversed preempted the Federal Arbitration Act

The MFA is an Act of Congress that provides that "regulation and taxation by the several States of the business of insurance is in the public interest" (15 U.S.C.A. § 1011), that "[t]he business of insurance, and every person engaged therein, **shall be subject to the laws of the several States which relate to the regulation or taxation of such business,**" (15 U.S.C.A. § 1012(a)(emphasis added)), and that "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance." (15 U.S.C.A. § 1012(a)). The MFA "preserves state statutes, enacted 'for the purpose of regulating the business of insurance,' from preemption and leaves the regulation of the business of insurance to the states." *Stephens,* 66 F.3d at 43.

There is no dispute the Louisiana Insurance Code was enacted for the purpose of regulating the business of insurance. (See La. R.S. 22:2 stating "Insurance is an industry affected with the public interest and it is the purpose of this Code to regulate that industry in all its phases…"). There is no dispute "the FAA does not specifically

14

relate to insurance." *Stephens*, 66 F.3d at 44. Consequently, the FAA cannot invalidate, impair, or supersede the Louisiana Insurance Code pursuant to the MFA.

**IV.    Louisiana law invalidates the arbitration clause in the Policies**

Several Louisiana statutes contained in the Louisiana Insurance Code, La. R.S. 22:1., et. *seq.,* invalidate the Arbitration Clause in the Policies.[5]

### A.    Arbitration clauses in insurance policies are prohibited and void in Louisiana pursuant to La. R.S. 22:868

Mpire first notes that whether arbitration clauses in insurance policies are still prohibited and void pursuant to La. R.S. 22:868 following 2020 amendments to La. R.S. 22:868 is the subject of a pending certified question to the Louisiana Supreme Court. See *Police Jury of Calcasieu Parish v. Indian Harbor Insurance Co.,* Case no. 2:24-CV-00342, 2024 WL 1545135 (W.D. La. April 9, 2024) in which Judge Cain of the United States District Court for the Western District of Louisiana certified a question to the Louisiana Supreme Court asking

> Whether the 2020 amendment adding Subsection D (Act No. 307 § 1 of 2020) to La. R.S. 22:868 to allow forum and venue selection clauses in limited circumstances implicitly repealed Subsection A's long-standing prohibition of arbitration clauses in all insurance policies in Louisiana? See, e.g., *Doucet v. Dental Health Plans Mgmt. Corp*., 412 So.2d 1383, 1384 (La. 1982).

---

[5]    See La. Rev. Statute 22:1 stating "This Title shall be known and may be cited as the "Louisiana Insurance Code."

As explained below, arbitration clauses are prohibited by La. R.S. 22:868(A). Further, the legislative history and text of La. R.S. 22:868(D), enacted in 2020, and long-standing Louisiana precedent indicate arbitration clauses are still prohibited in Louisiana insurance policies following the addition of La. R.S. 22:868(D).

The certified question in *Police Jury of Calcasieu Parish* was presumably ordered due to the recent decision of the United States Fifth Circuit Court of Appeals in *Indian Harbor Insurance Company v. Belmont Commons, L.L.C.*, WL 962376 (5th Cir. 3/6/24), holding that arbitration clauses in surplus lines insurance contracts are now valid following the 2020 amendment of La. R.S. 22:868. However, as explained below, *Indian Harbor* relied on non-insurance contract cases to analogize an arbitration clause in an insurance contract to a forum selection clause in an insurance contract, and *Indian Harbor* did not address a long line of Louisiana decisions invalidating arbitration clauses under La. R.S. 22:868(A) on the basis that they deprive a Louisiana court of jurisdiction. As such, *Indian Harbor* conflicts with clear direction from the Louisiana Supreme Court that has never been judicially or legislatively overruled that "Classification of [a] contract…as an insurance contract renders the arbitration provisions of that contract unenforceable under [La. R.S. 22:868]." *Doucet v. Dental Health Plans Mgmt. Corp.*, 412 So.2d 1383, 1384 (La.1982).

### i.    Prohibitions and Nullifications created by La. R.S. 22:868

Part A of La. R.S. 22:868 prohibits "any condition, stipulation, or agreement" in an insurance policy "requiring it to be construed according to the laws of any other state or country..." or "depriving the courts of this state of the jurisdiction[6] or venue of action against the insurer."

Part C further states that "[a]ny such condition, stipulation, or agreement in violation of this Section shall be void...." Part D, added in 2020 states that "The provisions of Subsection A of this Section shall not prohibit a forum[7] or venue[8] selection clause in a policy form that is not subject to approval by the Department of Insurance."

The Insurers don't dispute that Part A prohibits the enforcement of the arbitration clause,[9] but claim on pages 37 and 38 of their brief that Part D now allows

---

[6]    Black's Law Dictionary defines "jurisdiction" as "2. A court's power to decide a case or issue a decree." Black's Law Dictionary (11th ed. 2019).

[7]    Black's Law Dictionary defines "forum" as "2. A court or other judicial body; a place of jurisdiction." Black's Law Dictionary (11th ed. 2019).

    Black's Law Dictionary defines a "forum-selection clause" as "A contractual provision in which the parties establish the place (such as the country, state, or type of court) for specified litigation between them." Black's Law Dictionary (11th ed. 2019).

[8]    Black's Law Dictionary defines "venue" as "1. The proper or a possible place for a lawsuit to proceed, usu. because the place has some connection either with the events that gave rise to the lawsuit or with the plaintiff or defendant."

[9]    See the Insurers' brief at page 38 ("if subpart A of Section 868 stood alone, maybe—without the New York Convention—the Policy's arbitration clause was

them to include an arbitration clause in the Policies because "there is no question that surplus lines insurance of the type here is not subject to such approval." See La. R.S. § 22:446(A) ("The commissioner shall not require surplus lines insurers to file or seek approval of their forms and rates for Properties and casualty insurance …..)." Insurers' Brief at page 39. The Insurers' position fails for several reasons explained below and is at odds with decades of Louisiana jurisprudence.

> **ii. La. R.S. 22:868(A) distinguishes between jurisdictional and venue clauses, and while La. R.S. 22:868(D) now allows venue clause in some insurance policies, courts have invalidated arbitration clauses for decades because they deprive a Louisiana court of jurisdiction**

The Insurers do not cite any Louisiana state court cases that hold Part D now allows arbitration clause in insurance contracts, after being banned for decades. No such Louisiana state court cases exist.

La. R.S. 22:868(A) prohibits a term in an insurance contract "[d]epriving the courts of this state of the jurisdiction **or** venue of action against the insurer." (emphasis added). Conversely, Part D only creates an exception to the prohibition against "a forum or venue selection clause" with no reference to jurisdiction. Why? Because Louisiana courts have long held that an arbitration clause in insurance

---

unenforceable because the effect of compelling arbitration may be to "[d]eprive the courts of [Louisiana] of the jurisdiction or venue.")

contracts deprives a court of **jurisdiction** of action, as opposed to being a mere forum selection clause.

The Louisiana Supreme Court has held in that "Classification of [a] contract …as an insurance contract renders the arbitration provisions of that contract unenforceable under [La. R.S. 22:868]." *Doucet,* 412 So.2d at 1384. Stated differently, La. R.S 22:868 renders arbitration provisions in insurance policies unenforceable. See *Courville v. Allied Professional Ins. Co*., 2013-0976 (La. App. 1 Cir. 6/5/15) 174 So.3d 659, 666 citing La. R.S. 22:868 and stating "Louisiana has enacted a statute that effectively prohibits the enforcement of arbitration provisions in the context of insurance disputes").

Both before and after *Doucet*, Louisiana courts have consistently and repeatedly held arbitration clauses are prohibited pursuant to La. R.S. 22:868 (previously numbered La. R.S. 22:629) because they deprive a Louisiana Court of jurisdiction. The rationale was first explained in *Macaluso v. Watson*, 171 So.2d 755, 757 (La. App. 4 Cir. 1965) in which the Louisiana Fourth Circuit Court of Appeals cited the text of La. R.S. 22:868 (then La. R.S. 22:629) prohibiting "any condition, stipulation, or agreement…[d]epriving the courts of this state of the jurisdiction of action against the insurer" and stated

> That the arbitration agreement…has the effect of '(d)epriving the courts of this state of the jurisdiction of action against the insurer's admits of no argument. It unequivocally provides that the issue of liability as well as quantum be submitted to arbitration in accordance with the rules of

19

the American Arbitration Association and that the parties 'each agree to consider itself (themselves) bound and to be bound by any award made by the arbitrators.' It provides further that 'judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof.' Thus the function of the court is limited to that of a sheriff or enforcement officer to execute the award, whether or not it is in agreement with agreement with it. *Macaluso*, 171 So.2d at 757 to 758.

The Court concluded that "the arbitration agreement between plaintiff and his liability insurer, … is in violation of LSA-R.S. 22:629, subd. A(2) in that its effect is to deprive the courts of this state of **the jurisdiction of plaintiff's action** against the insurer, and therefore is void and unenforceable." *Macaluso* 171 So.2d at 757. Since *Macaluso*, Louisiana courts have repeatedly held arbitration clauses are unenforceable under La. R.S. 22:868 because they deprive Louisiana courts of jurisdiction.[10]

---

[10]    See *Doucet,* 412 So.2d at 1385 (Dennis, J., concurring) ("I believe that the contract sued upon is an insurance contract and that its arbitration clause cannot be enforced to deprive the courts of **jurisdiction"**).

See *Hobbs v. IGF Ins. Co*., 02-26, p. 3 (La.App. 3 Cir. 10/23/02), 834 So.2d 1069, 1071 ("Louisiana courts have consistently held that compulsory arbitration clauses in contracts of insurance are unenforceable under this statute because they operate to deprive Louisiana courts of **jurisdiction of the action** against the insurer.")

See *Courville*, 218 So.3d at 148 ("In Louisiana, compulsory arbitration provisions in insurance contracts are prohibited as a matter of public policy because they operate to deprive Louisiana courts of **jurisdiction over actions** against the insurer; further, such provisions deny Louisiana citizens of free access to its courts, a right guaranteed by the state's constitution.")

20

A concurring opinion in a recent Louisiana Supreme Court case highlighted the difference between forum selection clauses and arbitration clauses in insurance policies, and why the distinction rests on arbitration clauses depriving a court of jurisdiction. Justice Weimer noted the long history of courts not enforcing arbitration clauses because they deprived a court of jurisdiction,[11] but then upheld a forum selection clause identifying the courts of New York as a compulsory venue because

> La. R.S. 22:868(A)(2)'s prohibition is directed at agreements, like compulsory arbitration provisions, that would deprive Louisiana courts of the legal power and authority to hear a dispute. A forum selection clause, such as the one at issue in this case, does not deprive the courts of "jurisdiction of action against the insurer" [as opposed to an arbitration clause] within the meaning of La. R.S. 22:868(A)(2). *Creekstone Juban I, L.L.C. v. XL Insurance America, Inc.* 2018-0748 (La. 5/8/19) 282 So.3d 1042, 1053 (Weimer, J., concurring).

Justice Weimer also specifically noted "La. R.S. 22:868(A)(2) [i]s an anti-arbitration provision, directed at nullifying any agreement that would have the effect of depriving the courts of jurisdiction of actions against an insurer by excluding judicial remedies" and noted that "[t]his court reached the same conclusion in *Doucet*." *Creekstone,* 282 So.3d at 1053 (Weimer, J., concurring).

*Doucet* has never been overruled, legislatively or judicially, and is still the latest pronouncement of the Louisiana Supreme Court regarding arbitration clauses in insurance contracts, as noted in the certified question in *Police Jury of Calcasieu*

---

[11]    Citing *Macaluso, Doucet, Hobbs*, and *Courville*.

*Parish.* Further, the long line of cases invalidating arbitration clauses because they deprive a Louisiana court of jurisdiction – i.e. the power of a judicial remedy - has never been repudiated by the Louisiana Supreme Court. As such, even if La. R.S. 22:868(D) now allows certain insurers to include a forum or venue in an insurance policy, it does not allow them to include an arbitration clause because La. R.S. 22:868(D) does not create an exception to the prohibition in La. R.S. 22:868(A) depriving a Louisiana court of **jurisdiction** of an action.

How, then, do the Insurers deal with the long line of Louisiana cases clearly prohibiting arbitration clauses in insurance policies in Louisiana on jurisdictional grounds, coupled with no mention of jurisdiction in La. R.S. 22:868(D)? They suggest forum selection clauses are synonymous with arbitration clauses in Louisiana, and therefore the exception to the prohibition against forum selection clauses contained in La. R.S. 22:868(D) also applies to arbitration clauses despite La. R.S. 22:868(D) not referencing insurance terms depriving courts of jurisdiction specifically prohibited by La. R.S. 22:868(A). However, none of the Louisiana cases they cite for their proposition involve an arbitration clause in an insurance policy covered under La. R.S. 22:868, or even discuss La. R.S. 22:868 at all, and instead only analogize arbitration clauses to forum-selection clauses in non-insurance

22

contracts.[12] But, even putting aside the distinction between arbitration and forum selection clauses in insurance policies, Louisiana has always treated forum selection clauses in insurance policies differently than forum selection clauses in other types of policies which makes the cases cited by the Insurers even further attenuated.[13] As such, because Louisiana has consistently held arbitration clauses are void in insurance contracts because they deprive courts of jurisdiction in violation of La. R.S. 22:868(A), and because La. R.S. 22:868(D) does not except terms that deprive courts of jurisdiction from the prohibition in La. R.S 22:868(A), La. R.S. 22:868(D) does not allow arbitration clauses in insurance policies.

---

[12]    *Donelon v. Shilling*, 2019-00514 (La. 4/27/20) 340 So.3d 786 involved an arbitration agreement in a service contract between a company (that happened to be health insurance cooperative) and third-party contractor.

   *Hodges v. Reasonover*, 2012-0043 (La. 7/2/12), 103 So.3d 1069 involved an arbitration clause in an attorney-client contract.

   *Stadtlander v. Ryan's Fam. Steakhouses, Inc*., 34,384 (La.App. 2 Cir. 4/4/01)794 So.2d 881 involved an employment agreement between restaurant workers and their employer.

[13]    For non-insurance contracts, ("[forum selection] clauses should be enforced in Louisiana unless the resisting party can [show] enforcement would contravene a strong public policy of the forum...." *Shelter Mut. Ins. Co. v. Rimkus Consulting Grp., Inc. of Louisiana*, 148 So. 3d 871, 881 (La. 2014) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 13 (1972)). While it is true that forum selection clauses in insurance contracts also should not be enforced when the violate public policy, there are additionally and specifically banned by La. R.S. 22:868(A), subject to the provisions of La. R.S. 22:868(D).

Nonetheless, Mpire acknowledges that the United States Fifth Circuit Court of Appeals in *Indian Harbor* recently "characterized arbitration clauses as 'a type of venue selection clause'" and held that surplus lines insurers could enforce arbitration clauses in Louisiana.

First, the *Indian Harbor* opinion specifically states it "not designated for publication. See 5th Cir. R. 47.5" and therefore is specifically **not** precedent pursuant to U.S. Fifth Circuit Rule 47.5.4. Nonetheless, the Insurers will rely upon *Indian Harbor* in their Reply. The *Indian Harbor* court noted there was no guidance from the Louisiana Supreme Court on whether a venue or forum selection clause referenced in La. R.S. 22:868 referred to an arbitration clause, so it made an *Erie* guess. *Indian Harbor*, WL 962376 at *3. But the Court in *Indian Harbor*, like the Insurers in this case, relied solely on non-insurance contract cases[14] to analogize arbitration clause to forum selection clauses in insurance contracts.

Even more important, the Court in *Indian Harbor* failed to address *Doucet*, or any of the other cases in the long line of decisions invalidating arbitration clauses under La. R.S. 22:868(A) on the basis that they deprive a Louisiana court of jurisdiction.

---

[14]     The Fifth Circuit relied on *Donelon*, *Hodges*, and *Stadtlander*, plus *Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte*, 536 F.3d 439, (5th Cir. 2008) which involved an attorney-client contact.

24

Finally, the Court in *Indian Harbor* did not make any distinction between terms that deprive a court of **jurisdiction** of an action, as opposed to a forum or venue clause, though La. R.S. 22:868(A) separately addresses jurisdiction and venue, and terms depriving a court of **jurisdiction** of an action are not included in the exception in La. R.S. 22:868(D).

For these reasons, this Court is not bound by *Indian Harbor* pursuant to the Rules of the Fifth Circuit and the analysis in *Indian Harbor*, and this Court should follow the long, unbroken line, of Louisiana Supreme Court and appellate Louisiana cases dating back decades holding that La. R.S. 22:868 prohibits arbitration clauses in insurance contracts because they deprive a Louisiana court of jurisdiction.[15]

If the Louisiana Supreme Court answers in *Police Jury of Calcasieu Parish* that La. R.S. 22:868(D) repealed La. R.S. 22:868(A)'s long-standing prohibition of arbitration clauses in insurance policies in Louisiana, the Insurers can credibly contend arbitration clauses are now allowed under some circumstances in Louisiana

---

[15]    As this Court stated in *Factors Etc. v. Pro Arts,* 652 F.2d 278, 283 (2d Cir. 1981)

> We need not and do not conclude that the state law holding of the pertinent court of appeals is automatically binding upon the federal courts of all the other circuits. The ultimate source for state law adjudication….is the law as established by the constitution, statutes, or authoritative court decisions of the state.

*Indian Harbor* conflict with the authoritative court decision of the Louisiana Supreme Court in *Doucet* and therefore *Indian Harbor* is not binding on this Court.

insurance policies. Until then, "Classification of [a] contract …as an insurance contract renders the arbitration provisions of that contract unenforceable under [La. R.S. 22:868]" is still the law of Louisiana as stated by the Louisiana Supreme Court in *Doucet,* 412 So.2d at 1384.

### iii. The phrase "surplus lines insurer" does not appear anywhere in La. R.S. 22:868(D), and La. R.S. 22:436 subjects the Insurers to approval of the Department of Insurance

Even if the reference to a "forum or venue selection clause" in La. R.S. 22:868(D) applied to arbitration clauses, it still would not apply to the Policies. The phrase "surplus lines insurer" does not appear anywhere in La. R.S. 22:868. Yet, the Insurers contend the phrase "a policy form that is not subject to approval by the Department of Insurance" used in La. R.S. 22:868(D) is necessarily synonymous with "surplus lines insurer" because surplus lines insurers are not required "to file or seek approval of their forms and rates for Properties and casualty insurance" before issuing policies pursuant La. R.S. 22:446(A).

The Insurers do not cite any Louisiana state court cases for their belief indicating that Part D of La. R.S. 22:868 exempting certain insurance policies from the Louisiana prohibition against forum selection clause applies to the Insurers simply by virtue of being surplus lines insurers, and no such Louisiana states cases exist. Further, the Insurers' interpretation ignores La. R.S. 22:436, which still allows

the Commissioner to exercise approval or disapproval over policy forms after issuance by surplus lines insurers.

Part A of La. R.S. 22:436, addressing surplus lines insurers, states "The commissioner of insurance shall maintain a list of approved unauthorized insurers from those eligible unauthorized insurers that apply for approval and satisfy the criteria established by the commissioner." The approved unauthorized insurer list referenced in La. R.S. 22:436 is known as "the White List" and published as "The Approved Unauthorized Insurer List - Surplus Lines (White List)."[16] All of the insurers hold surplus lines licenses in Louisiana. A168 to A179. All of the insurers are classified as Approved Unauthorized Surplus Lines Insurers by the Louisiana Department of Insurance and are on the White List. A179 to A226.

Part B of La. R.S. 22:436 states "(B)The commissioner may remove an approved unauthorized insurer from the list [of approved unauthorized insurers] if:...(6) The insurer has willfully violated the laws of this state."

La. R.S. 22:2 states "The commissioner of insurance shall have the authority to make reasonable rules and regulations, not inconsistent with law, to enforce, carry out, and make effective the implementation of th[e] [Louisiana Insurance] Code." Louisiana Insurance Bulletin, LA Directive No. 175(#2) states "Surplus lines insurers are hereby reminded that the use of policy provisions that are contrary to

---

[16]     accessible at https://www.ldi.la.gov/onlineservices/WhiteList/

the public policy of this state constitutes sufficient grounds for removal from the list of approved unauthorized insurers pursuant to La. R.S. 22:436."

In sum, because La. R.S. 22:436 allows the Commissioner of Insurance to revoke the Insurers' licenses as approved surplus lines insurer by removal from the White List, the Insurers' policy forms are "subject to approval by the Department of Insurance" as used in part D of La. R.S. 22:868. Consequently, the Insurers are subject to the prohibition again forum selection clauses contained in Part A of La. R.S. 22:868, and are not exempted from the prohibition through Part D.

Further, the aforementioned analysis assumes that the arbitration clause in the Policies is merely a forum selection clause (which it is not because it deprives Louisiana courts of jurisdiction). But, the arbitration clause is also a choice-of-law clause which is indisputably illegal under the Louisiana insurance Code.[17] While La. R.S. 22:868(D) states "[t]he provisions of Subsection A of this Section shall not prohibit a forum or venue selection clause in a policy form that is not subject to approval by the Department of Insurance", Part D does not exempt any Louisiana insurers from the provision of Part A which prohibits policies requiring policies to be construed according to the laws of states other than Louisiana. Given that that

---

[17]     The clause states "The seat of the Arbitration shall be in New York and the Arbitration Tribunal shall apply the law of New York as the proper law of this insurance. The Arbitration Tribunal may not award exemplary, punitive, multiple, consequential, or other damages of a similar nature." A.64.

the arbitration clause of the Policies seeks to illegally displace Louisiana law with New York law, it is void under Louisiana law.

> ### iv. The legislative history of the 2020 amendment to La. R.S. 22:868, adding Part D, indicates the exception to the prohibition against depriving Louisiana courts of venue was not intended to apply to surplus lines insurers

The legislative history of La. R.S. 22:868 indicates that La. R.S. 22:868(D) was intended to apply to "special commercial entities" identified in Part F of La. R.S. 22:861, not surplus lines insurers. Part F of La. R.S. 22:861, entitled "Approval of Forms" states that "Insurers negotiating with and insuring special commercial entities shall be exempt from the form filing and approval requirements of this Section."[18] It is uncontested that neither the Sellers nor Mpire is a "special commercial entity."[19]

---

[18] La. R.S. 22:861(A)(1) states "A. (1) No basic insurance policy form, other than fidelity or surety bond forms, or application form where written application is required and is to be attached to the policy, or be a part of the contract or printed life, annuity, or health and accident rider or endorsement form shall be issued, delivered, or used unless it has been filed with and approved by the commissioner of insurance."

[19] Special commercial entities are defined in the insurance commissioner's regulations as policyholders that meet all of the following criteria:

> 1) maintain aggregate annual insurance premiums exceeding $200,000,
> 2) at the time the policy is issued the policyholder must have:
> > a. if a single company not less than 50 employees;
> > b. if a member of an affiliated group not less than 100 employees collectively;
> > c. if a municipality a population of not less than 50,000; and

Part D of La. R.S. 22:868 was added in 2020 pursuant to an act introduced by Senator Jay Luneau. 2020 La. Sess. Law Serv. Act 307 (S.B. 156) (West). In 2022, Senator Luneau introduced a bill to restate Part D to clarify his own previous bill to "[t]he provisions of Subsection A of this Section shall not prohibit a forum or venue selection clause in a policy form that is not subject to approval by the Department of Insurance **pursuant to the provisions of R.S. 22:861(F) regarding special commercial entities**." ). 2022 LA S.B. 484 (NS) (emphasis added). Consequently, Senator Luneau intended that Part D of the La. R.S. 22:868 apply to special commercial entities identified in La. R.S. 22:861(F), as opposed to surplus lines insurers as suggested by the Insurers. Also, nothing in the bill history indicates intent to change the long prohibition against arbitration clauses in insurance contracts.

**B.      Interpreting La. R.S. 22:868(D) to apply to surplus lines insurers would contradict La. R.S. 22:442 which, unlike La. R.S. 22:868, states it specifically applies to surplus lines insurers**

La. R.S. 22:442, states "An unauthorized insurer **shall be sued,** upon any cause of action arising in this state under any contract issued by it as a surplus lines contract, pursuant to this Subpart, **in the district court of the parish** [the Louisiana equivalent to a county] **in which the cause of action arose**. (emphasis added). The

_____

d. if a public entity an operating budget of not less than $20 million for the most recently completed calendar or fiscal year whichever applies;
3) has signed a form certifying itself as a special commercial entity.
La. Admin. Code, Title 37, § 9013.

30

Louisiana legislature has instructed "[t]he word 'shall' is mandatory and the word 'may' is permissive." La. R.S. 1:3.

But, La. R.S. 22:443 states the provision of La. R.S. 22:442, "shall not apply to … the following insurances when so placed by licensed surplus lines brokers of this state…:"

> (1) Ocean marine and foreign trade insurance.
> (2) Insurance on Properties or operation of railroads engaged in interstate commerce.
> (3) Insurance of aircraft owned or operated by manufacturers of aircraft, or of aircraft operated in scheduled interstate flight, or cargo of such aircraft, or against liability, other than workers' compensation and employer's liability, arising out of the ownership, maintenance, or use of such aircraft.

However, the Policies are property insurance policies, and not one of the types of exempted polices identified in La. R.S. 22:443. Consequently, the Insurers are not exempt from the mandate that they shall be sued in parish where the cause of action arises under the surplus lines insurance policies.[20]

Under both federal and Louisiana law, a more specific statute control over a general one. ("It is an established canon of construction that a specific provision "controls over one of more general application." *Natofsky v. City of New York*, 921 F.3d 337, 345 (2nd Cir. 2019) citing *Gozlon-Peretz v. United States*, 498 U.S. 395, 407, 111 S.Ct. 840, 112 L.Ed.2d 919 (1991); "It is a well-settled canon of statutory

---

[20]     Before the Insurers instituted the instant suit, Mpire sued some of the Insurers in state court in Louisiana in Jefferson parish.

construction that the more specific statute controls over the general statute." *Burge v. State*, 2010-2229 (La. 2/11/2011)) 54 So. 3d 1110, 1113. Consequently, if there is any conflict between La. R.S. 22:868(D) and La. R.S. 22:442, La. R.S. 22:442 indicating that surplus lines insurers **shall** be sued in the in the district court of the parish in which the cause of action against them arises prevails because "surplus lines" does not appear anywhere in 22:868(D).

Nonetheless, Mpire again acknowledges the recent decision in *Indian Harbor,* because it also held that a policy issued by a surplus lines insurer qualified as "a policy form that is not subject to approval by the Department of Insurance" used in 22:868(D). But, unlike in this case, the insured party in *Indian Harbor* agreed La. R.S. 22:868(D) applied to surplus lines insurers.[21] Consequently, the decision in *Indian Harbor* contains no analysis of the interplay between La. R.S. 22:868(D) with other provisions of the Louisiana Insurance Code such as La. R.S. §§ 22:436, 22:442, 22:443, and 22:861 addressed above which compel a different interpretation. Instead, based on the lack of any dispute by the parties regarding the application of La. R.S. 22:868(D) to surplus lines insurers, the court summarily concluded that

> Surplus lines insurers' forms for Properties insurance are not subject to approval by the Louisiana Department of Insurance. LA. R.S. § 22:446(A). Since surplus lines insurers are covered by LA. R.S. § 22:868(D), the district court reasoned that the prohibition on arbitration

---

[21] The opinion states "Belmont acknowledges …the Louisiana statute that bars arbitration clauses in insurance contracts issued by domestic insurers contains a carve-out for surplus lines insurers." WL 962376 at *2.

clauses contained in LA. R.S. § 22:868(A) does not apply to the Policy. We agree with the district court. *Indian Harbor*, WL 962376 at *3.

The blanket application of La. R.S. 22:868(D) to all surplus line insurers in *Indian Harbor* was an *Erie* Guess, and made without substantive analysis of the Louisiana Insurance Code regarding whether "a policy form that is not subject to approval by the Department of Insurance" referenced in 22:868(D) necessarily refers to surplus lines insurers even though surplus lines insurers' policies are subject to approval by the Department of Insurance because La. R.S. 22:436 allows the Commissioner of insurance to revoke their licenses for including illegal terms in policies. As such, this Court is not bound by *Indian Harbor* legally or factually, and should be guided by the Louisiana Insurance Code. Nor is this court bound by any other federal decisions cited the Insurers, since there is no decision whatsoever by an appellate court in Louisiana, federal or state, analyzing and holding that La. R.S. 22:868(D) applies to all surplus lines (instead of assuming so based on agreement of the parties).

### C.    Even if the arbitration clause were a forum selection clause enforceable by the Insurers (as suggested by them), it should not be enforced because it violates Louisiana public policy

In addition to specific provisions of La. R.S. 22:868, forum selection clauses are not enforceable when they violate strong public policy of a forum in which suit is brough under both federal and Louisiana law. See *M/S Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 15, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972) ("A contractual choice-of-forum clause should be held unenforceable if enforcement would

33

contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision."). See also *Shelter Mut. Ins. Co. v. Rimkus Consulting Grp., Inc. of Louisiana*, 2013-1977 (La. 2014) 148 So. 3d 871, 881 stating ("[forum selection] clauses should be enforced in Louisiana unless the resisting party can [show] enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision.") (quoting *M/S Bremen,* 407 U.S. at 13).

This instant suit was filed in response to an earlier filed suit instituted by Mpire in Louisiana. Even if the arbitration clause is a forum-selection clause as suggested by the Insurers, it is one that strongly contravenes La. R.S. 22:868 by stating that arbitration will be conducted under New York law, since La. R.S. 22:868 prohibits and voids choice-of-law clauses in insurance policies without exception.[22] As such, the arbitration clause is not enforceable under Louisiana law even if it was

---

[22]    Applying New York law to this dispute would violate strong Louisiana public policy which penalizes insurers for bad-faith claims handling and allows for the recovery of consequential damages, penalties, and attorney fees pursuant to La. R.S 22:1973 and La. R.S. 22:1892. However, under New York law, "Punitive damages [in insurance cases] are available only in those limited circumstances where it is necessary to deter defendant and others like it from engaging in conduct that may be characterized as 'gross' and 'morally reprehensible,' and of ''such wanton dishonesty as to imply a criminal indifference to civil obligations.''" *N.Y. Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 315–16, 662 N.E.2d 763 (N.Y. 1995). In addition, consequential damages are only available when "reasonably foreseeable and contemplated by the parties." *Bi–Economy Mkt., Inc. v. Harleysville Ins. Co. of N.Y.*, 10 N.Y.3d 187, 196, 856 N.Y.S.2d 505, 510, 886 N.E.2d 127, 132 (2008).

considered to be a forum selection clause.

## V. The Louisiana Insurance Code determines the validity and enforceability of the arbitration clause in the Policies because *Stephens* holds that Convention is not self-executing, and text, history, and judicial treatment of the Convention all confirm it was not self-executing

In *Stephens*, this Court addressed whether the Convention preempts state insurance laws. In addressing whether the Convention superseded a Kentucky statute that prohibited arbitration, the *Stephens* court stated "The argument is that under the Supremacy Clause the Convention supersedes the Kentucky Liquidation Act. This argument fails because the Convention is not self-executing, and therefore, relies upon an Act of Congress for its implementation. See 9 U.S.C. §§ 201–208 (1994)." *Stephens,* at 66 F.3d 45. The *Stephens* Court further stated

> McCarran–Ferguson states "[n]o Act of Congress shall be construed to ... supersede any law ... regulating the business of insurance." 15 U.S.C. § 1012(b) (1994). Accordingly, the implementing legislation does not preempt the Kentucky Liquidation Act—which, as we have already held, is a law "regulating the business of insurance." The Convention itself is simply inapplicable in this instance.

*Stephens* is directly on point and has not been overruled by an en banc panel of this Court or the Supreme Court, and therefore controls.

Nonetheless, should this Court choose to re-analyze whether the Convention is self-executing, a review of the text, history, and judicial treatment of the Convention all confirm it was not self-executing and has no domestic authority absent the implementation of it through the FAA. In fact, Congress and President

35

Johnson both recognized that the Convention required implementing legislation to take effect, and implementing legislation was passed and incorporated into the FAA in connection with the United States acceding to the Convention. Nonetheless, the insurers claim that the Convention was somehow transformed into a self-executing treaty decades later based on language contained in the 2008 Supreme Court decision *Medellin v. Texas*, 552 U.S. 491, 505 at fn.2, 128 S.Ct. 1346, 1369 ,170 L.Ed.2d 190 (2008). But *Medellin* does not support the Insurers' position, and instead specifically cited the Convention as a treaty that required implementing legislation.

### A. The text of the Convention indicates it as not self-executing because it necessarily required implementing legislation

A treating is "self-executing" when "the treaty has automatic domestic effect as federal law upon ratification." *Medellin v. Texas*, 552 U.S. 491, 505 at fn.2, 128 S.Ct. 1346, 1369 ,170 L.Ed.2d 190 (2008). "Conversely, a 'non-self-executing treaty does not by itself give rise to domestically enforceable federal law. Whether such a treaty has domestic effect depends upon implementing legislation passed by Congress." *Id.* As such, there is no dispute that "not all international law obligations automatically constitute binding federal law enforceable in the United States' courts." *Medellín,* 552 U.S. at 504; *See also*, *Foster v. Nielson*, 27 U.S. 253 (1829). Rather, "Only 'if the treaty contains stipulations which are self-executing, that is, **require no legislation to make them operative**, [will] they have the force and effect

36

of a legislative enactment.'" *Medellin,* 552 U.S. at 505-506 citing *Whitney v. Robertson*, 124 U.S. 190, 194, 8 S.Ct. 456, 31 L.Ed. 386 (1888)(emphasis added).[23]

Some treaties specifically state that they are self-executing upon ratification, such as Convention and protocol between the United States of America and other American Republics for the protection of trade-marks, which states "The provisions of this Convention shall have the force of law in those States in which international treaties possess that character, as soon as they are ratified by their constitutional organs.)." Trademark and Commercial Protection; Registration of Trademarks (Inter-American): General Inter-American Convention for Trade Mark and Commercial Protection art. 3, Feb. 20, 1929, 46 Stat. 2907. Other treaties, like The Convention, do not contain such language.

The Insurers contend that the following text in the Convention contained in Article II, section three, is "self-executing" such that it possesses the power of domestic law in the United States with no further action from Congress:

> 3. The court of a Contracting State, when seized of an action in a matter in respect of which the parties have made an agreement within the meaning of this article, shall, at the request of one of the parties, refer the parties to arbitration, unless it finds that the said agreement is null and void, inoperative or incapable of being performed.

---

[23]    As noted in a Yale Law Journal article written about the Convention in 1962, "Creating an international obligation of the country is one thing; effectuating that obligation as municipal law is quite another." Quigley, Leonard, *Accession by the United States to the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards*, Yale Law Journal, 70 YLJ 1049, 1059.

While "interpretation of a treaty, like the interpretation of a statute, begins with its text" *Medellin,* 552 U.S. at 506, "…a treaty ratified by the United States is an agreement among sovereign powers, [so the Supreme Court] has also considered as aids to its interpretation the negotiation and drafting history of the treaty.…" *Medellin*, 522 U.S. at 507 (internal citations omitted).

Further, the plain language of a treaty must always be read in the context of its structure and purpose. See e.g., *Eastern Airlines, Inc. v. Floyd*, 499 U.S. 530, 534, (1991) (Stating that courts "must construe the literal language of the treaty in light of its structural organization and its purpose-as reflected in the preamble and other part of the treaties").

Article I (3) of the Convention indicates that the United States (and other nations) had discretion with regard to the implementation of the Convention, stating "any State ….may…declare that it will apply the Convention only to differences arising out of legal relationships…considered as commercial under the national law of the State making such declaration." The United States made such a declaration in implementing legislation, with Congress stating in 9 U.S.C. sec. 202 that "An arbitration agreement or arbitral award arising out of a legal relationship… which is considered as commercial… falls under the Convention." A self-executing reading interpretation of Article II (3) could require United States courts to refer non-commercial arbitration agreements to arbitration, though Congress did not include

those arbitration agreement as falling under Convention as it was allowed to do under the Convention. Consequently, a self-executing interpretation of Article II (3) would necessarily conflict with Article I (3).

### B. The President and Congress's understanding of the Convention at the time of ratification indicates it was not self-executing

The Supreme Court has also stated that the Senate's ratification of a treaty with the understanding that the treaty is not self-executing is strong evidence that a treaty is not self-executing. See *Sosa v. Alvarez-Machain*, 542 U.S. 692, 735 (2004) ("[T]he United States ratified the Covenant on the express understanding that it was not self-executing and so did not create obligations enforceable in federal courts…").

Expressed statements of intent are often viewed as dispositive in determining whether a treaty is self-executing or not. See, *Medellín*, 552 U.S. at 519 ("[W]e have held treaties to be self-executing when the textual provisions indicate that the President and Senate intended for the agreement to have domestic effect") and at 521 ("Our cases simply require courts to decide whether a treaty's terms reflect a determination by the President who negotiated it and the Senate that confirmed it that the treaty has domestic effect."). In his message to Congress requesting ratification of the Convention, President Johnson specifically stated that executing legislation would be required:

> *To the Senate of the United States:*
> With a view to receiving the advice and consent of the Senate to accession, I transmit herewith the Convention….

…
Changes in title 9 (arbitration) of the United States Code will be required before the United States becomes a party to the convention. The United States instrument of accession to the convention will be executed only after the necessary legislation is enacted." 114 CONG.REC. 10488 (1968) (message of President Johnson).

The House Judiciary Report regarding the legislation to implement the Convention stated "THE PURPOSE OF S. 3274 IS TO IMPLEMENT THE CONVENTION …. EVEN THOUGH THE CONVENTION WAS APPROVED IN OCTOBER 1968, THE INSTRUMENT OF ACCESSION WILL NOT BE DEPOSITED UNTIL S. 3274 IS ENACTED INTO LAW. H.R. REP. NO. 91-1181, at 2 (1970). See also Hearing to Implement the Convention in the Recognition of Foreign Arbitral Awards Before the Sen. Comm. on Foreign Relations, 91st Cong. 32 (1970) (statement of Richard D. Kearney) as reprinted in S. REP. NO. 91-702, at 5 (1970) stating "The bill which is presently before you sets up the legal structure that is required to implement the Convention."

**C.    The Supreme Court has consistently recognized that the Convention was not self-executing, both before, after, and even in *Medellin***

The first Supreme Court case to address the Convention was *Scherk v. Alberto-Culver Co*. 417 U.S. 506, 94 S.Ct. 244, 941 L.Ed.2d 270 (1974) in which the Court considered whether to stay litigation and enforce arbitration pursuant to a written contract between an American company and German citizen. The Court

enforced the arbitration agreement, and set forth a brief history of the implementation of the Convention as follows:

> On June 10, 1958, a special conference of the United Nations Economic and Social Council adopted the Convention on the Recognition and Enforcement of Foreign Arbitral Awards. In 1970 the United States acceded to the treaty, (1970) 3 U.S.T. 2517, T.I.A.S. No. 6997, **and Congress passed Chapter 2 of the United States Arbitration Act, 9 U.S.C. s 201 et seq., in order to implement the Convention**. Section 1 of the new chapter, 9 U.S.C. s 201, provides unequivocally that the Convention 'shall be enforced in United States courts in accordance with this chapter.' *Scherk*, 417 U.S. at 520, fn.15. (emphasis added)

The *Scherk* Court specifically declined to state whether the Convention was self-executing, and instead specifically relied upon passage of Chapter 2 of the FAA in reaching its decision, as follows:

> Without reaching the issue of whether the Convention, apart from the considerations expressed in this opinion, would require of its own force that the agreement to arbitrate be enforced in the present case, we think that this country's adoption and ratification of the Convention and the passage of Chapter 2 of the United States Arbitration Act provide strongly persuasive evidence of congressional policy consistent with the decision we reach today. *Scherk*, 417 U.S. at 520, fn.15.

In fact, the Supreme Court has never found the Convention to be self-executing and has instead repeatedly referred to it as being implemented by Congress.

The Supreme Court addressed the Convention in *Medellin* in 2008. *Medellin* addressed whether the Vienna Convention on Consular Relations ("The Vienna Convention") was a self-executing treaty. It held the Vienna Convention was not. The Insurers rely on *Medellin* to suggest that the Convention is self-executing. But

41

the Court in *Medellin* specifically recognized the Convention as an example of a treaty in which Congress passed legislation to implement a **non-**self-executing treaty as follows:

> In addition, **Congress is up to the task of implementing non-self-executing treaties, even those involving complex commercial disputes**. Cf. post, at 1388 (BREYER, J., dissenting). The judgments of a number of international tribunals enjoy a different status because of implementing legislation enacted by Congress. See, e.g., 22 U.S.C. § 1650a(a) ("An award of an arbitral tribunal rendered pursuant to chapter IV of the [Convention on the Settlement of Investment Disputes] shall create a right arising under a treaty of the United States. The pecuniary obligations imposed by such an award shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States"); 9 U.S.C. §§ 201–208 ("The [U.N.] Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, shall be enforced in United States courts in accordance with this chapter," § 201). **Such language demonstrates that Congress knows how to accord domestic effect to international obligations when it desires such a result.** *Medellin v. Texas*, 552 U.S. at 522. (emphasis added).

Since *Medellin*, the Supreme Court has continued to recognize the Convention is enforceable in the United States because of its implementation through the FAA:

- "In 1970, the United States acceded to the New York Convention, and **Congress enacted implementing legislation in Chapter 2 of the FAA**." *GE Energy,* 590 U.S. at 439 (emphasis added)

- "Seeking to collect, Smagin filed an enforcement action in the Central District of California to confirm and enforce the London Award under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards,

June 10, 1958, 21 U. S. T. 2517, T. I. A. S. No. 6997, **as implemented by 9 U.S.C. §§ 201–208**." *Yegiazaryan v. Smagin* 599 U.S. 533, 538, 143 S.Ct. 1900, 1906, 216 L.Ed.2d 521(2023). (emphasis added).

In short, there is no reason to believe the Convention is self-executing post-*Medellin*, and *Medellin* specifically suggests the opposite.

## VI.    If the Convention is not self-executing, then it has no effect domestically

The Insurers contend on page 30 of their brief "even if the New York Convention were not self-executing, it would still preempt Section 868" because the Convention is not an act of Congress which is required in order to be reversed pre-empted under the MFA. This suggestion was already rejected by this Court in *Stephens*. And, the Insurers ignore that when a non-self-executing treaty is implemented through Congressional legislation, the enabling act is the only source of federal preemptive law. *See Medellín*, 552 U.S. at 505-506, (Only "[i]f the treaty contains stipulations which are self-executing, that is, require no legislation to make them operative, [will] they have the force and effect of a legislative enactment") citing *Whitney v. Robertson* 124 U.S. at 194. See also *Whitney*, id. ("When the stipulations are not self-executing, they can only be enforced pursuant to legislation to carry them into effect, and such legislation is as much subject to modification and repeal by congress as legislation upon any other subject").

Stated alternatively, "Once a treaty is ratified without provisions clearly according it domestic effect… whether the treaty will ever have such effect is governed by the fundamental constitutional principle that the power to make the necessary laws is in Congress; the power to execute in the President." *Medellin,*552 U.S. at 526. (internal citation omitted). Hence, because the Convention is non-self-executing, it is the Convention Act, as incorporated in Chapter 2 of the FAA, that is at conflict with the Louisiana Insurance Code, and thus subject to reverse-preemption under the MFA. This was the reasoning for the holding in *Stephens*, and still holds true today.

The Insurers also contend that MFA can only preempt domestic legislation, and therefore does not apply to the Convention. The Insurers contend that Chapter 2 of the FAA is not subject to reverse preemption because it has "international origins" and Congress intended for the McCarran-Ferguson Act to apply only to domestic commerce legislation and not to congressional legislation implementing a non-self-executing treaty relating to foreign commerce. The Insurers rely on Supreme Court's decision in *American Ins. Ass'n v. Garamendi*, 539 U.S. 396 (2003), and the Fourth Circuit's decision in *ESAB Group*, *Inc. v. Zurich Ins. PLC,* 685 F.3d 376 (4th Cir. 2012)[24] for their contention. This argument is afar reach. In *Garamendi,* the Supreme

---

[24]    Ruling that because the Supreme Court in *Garamendi* stated that the McCarran-Fergusson Act refers to legislation relating to "domestic commerce", then

44

Court held the state of California's Holocaust Victim Insurance Relief Act did not reverse-preempt conflicting executive agreements made by the United States with Germany, Austria and France because executive agreements, which require no ratification by the Senate or approval of Congress, are not "Acts of Congress" at all. *See Garamendi*, 539 U.S. at 396. The Supreme Court did not rule that congressional acts regulating foreign commerce, or acts implementing a non-self-executing treaty, are not "Act[s] of Congress" outside the scope of the McCarran-Ferguson Act. Thus, *Garamendi* does not suggest that this Court find that MFA does not reverse the FAA as this Court held in *Stephens*.

## VII. Even if the Convention applied to the Policies, the Convention does not require enforcement of the arbitration clause

Even if the Convention applied to the Policies, Article II (1) affords each adopting state discretion to choose what subject matters are "capable of settlement by arbitration" for purposes of the Convention. *See GE Energy,* 590 U.S. at 440 citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc*., 473 U.S. 614, 639, 105 S.Ct. 3346, 3360, 87 L.Ed.2d 444 (1985). (Ruling that given "that the Convention was drafted against the backdrop of domestic law", "the provisions of Art. II contemplate the use of domestic law to fill gaps in the Convention. For

---

Chapter 2 of the FAA is not subject to reverse-preemption because it relates to foreign commerce. *ESAB Group*, *Inc.,* 685 F.3d at 389.

example, Article II (1) refers to disputes 'capable of settlement by arbitration' but it does not identify what disputes are arbitrable, leaving that matter to domestic law.)"

In the case of the United States domestic law, Congress, by enacting the MFA, has left to states to regulate insurance and the enforceability of arbitration clauses in insurance contracts. And, explained above, Louisiana has prohibited arbitration clauses in insurance contracts by stating in La. R.S. 22:868 that any "condition, stipulation, or agreement" in an insurance contract depriving the courts of Louisiana of jurisdiction "shall be void." As such, an insurance dispute in Louisiana is not a subject matter "capable of settlement by arbitration" and therefore courts of the United States are not bound to recognize an agreement to arbitrate a Louisiana insurance dispute pursuant to Article II (1).[25]

Further, as explained in *GE Energy*

Article II (3) states that it does not apply to agreements that are "null and void, inoperative or incapable of being performed," but it fails to define those terms. Again, the Convention requires courts to rely on domestic law to fill the gaps; it does not set out a comprehensive regime that displaces domestic law. *GE Energy*, 590 U.S. at 441.

In this case, the arbitration clause is null and void and inoperative under United States law because it is in an insurance contact - so Louisiana law determines

_____

[25] Notably, a similar result was suggested by the Supreme Court in *Mitsubishi* which stated that "We…note that in the event the choice-of-forum and choice-of-law clauses operated in tandem as a prospective waiver of a party's right to pursue statutory remedies…, we would have little hesitation in condemning the agreement as against public policy.…" *Mitsubishi.*, 473 U.S. 614, 639 at fn.21.

whether it is null and void or operative, and La. R.S. 22:868 mandates that the arbitration clause is null and void and inoperative.

In sum, even if this Court were to find that the Convention applied to the Policies, Article II of the Convention does not require enforcement of the arbitration clause because a Louisiana insurance dispute is not a matter capable of settlement by arbitration, and because the arbitration clause in the Policies is null and void and inoperable under Louisiana, and therefore United States, law.

## CONCLUSION AND PRAYER FOR RELIEF

The District Court's decision was correct for all of the following reasons:

1. The District Court did not delegate the decision whether to compel arbitration to an arbitrator because Mpire attacked the validity of the arbitration clause, which was correct procedure pursuant to *Rent-A-Ctr.* and *Henry Schein.*

2. Pursuant to *Lucas Kahn*, the arbitration clause in the Policies is not valid under the Convention because it was not signed by neither the Sellers nor Mpire.

3. Pursuant to *Stephens*, the Louisiana Insurance Code reverse preempts the FAA pursuant to the MFA because the Louisiana Insurance Code specifically regulates insurance and FAA does not specifically relate to insurance.

4. The Louisiana Insurance Code invalidates the arbitration clause in the Policies because, among several reasons, decades-long precedent in Louisiana

establishes that La. R.S. 22:868 prohibits arbitration clauses in insurance policies because arbitration clauses deprive Louisiana courts of jurisdiction.

5. The Convention is not self-executing pursuant to *Stephens*, which is confirmed by the text of the Convention, the history of ratification of the Convention, and Supreme Court treatment of the Convention.

6. As a non-self-executing treaty, the Convention has no force in the United States other than through its implementing legislation pursuant to *Medellin,* and does not preempt Louisiana law on its own.

7. Even if the Convention applied to the Policies, Article II of the Convention does not require enforcement of the arbitration clause because a Louisiana insurance dispute is not capable of settlement by arbitration, and because the arbitration clause is null, void, and inoperable under domestic law.

For all of these reasons, Mpire prays that this Court affirm the decision of the District Court, denying the Insurers' Petition to Compel Arbitration and their Motion to Enjoin the Louisiana State Court Action, and dismissing the Insurers' case.

Respectfully submitted,

/s/ William A. Barousse
**VOORHIES LAW FIRM, L.L.C.**
William A. Barousse (LA #29748)
Energy Centre, Suite 2810
1100 Poydras Street
New Orleans, Louisiana 70163
Phone: (504) 875-2223
Fax: (504) 875-4882
E-mail: william@voorhieslaw.com
***Attorney for Respondent-Appellee***
***Mpire Blvd, LLC***

### Certificate of Service

On May 9, 2024, I caused this Appellee Brief to be filed electronically with the Clerk of the Second Circuit Court of Appeal through the Court's CM/ECF system, which sent an e-mail notice of the electronic filing to all registered counsel.

/s/ William Barousse
William A. Barousse
Dated: May 9, 2024

## <u>CERTIFICATE OF COMPLIANCE WITH<br>TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS,<br>AND TYPE STYLE REQUIREMENTS</u>

Under Fed. R. App. P. 32(g), I certify the following:

1. This motion complies with the type-volume limitation Local Rule 32.1(a)(4)(A) because this motion contains 13,858 words, excluding the parts of the motion exempted by Fed. R. App. P. 32(f).

2. This motion complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this motion has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman Regular 14-pt font.

<u>/s/ William Barousse</u>
William A. Barousse
Date: May 9, 2024

50